**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MARK A. SPRINGER,** | Case No. 5:19 CV 2562 |
| Plaintiff, | Judge James Gwin |
| v. | Magistrate Judge James R. Knepp II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

Plaintiff Mark Springer ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated November 1, 2019). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in October 2016, alleging a disability onset date of May 1, 2015. (Tr. 211-18). His claims were denied initially and upon reconsideration. (Tr. 145-50; 154-58). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 159). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on October 5, 2018. (Tr. 45-82). On November 9, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 7-36). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955,

404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on November 1, 2019. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Plaintiff was born in 1960, making him 58 years old at the time of the hearing and when the ALJ's decision was issued. *See* Tr. 51. He testified during his hearing that he attended Stark Technical College for one-and-a-half years but did not obtain a degree. (Tr. 52). He completed a five-year apprenticeship program with the International Brotherhood of Electrical Workers (IBEW). (Tr. 53). Plaintiff previously worked as an electrician. (Tr. 76).

On November 8, 2016, Plaintiff completed a Function Report. (Tr. 262-69). He said he cannot work because he cannot remember, loses his balance, has seizures, and suffers fatigue. (Tr. 262). He noted he reads (Tr. 263) and manages his own finances (Tr. 265-66).

On March 22, 2017, Plaintiff completed a second Function Report. (Tr. 286-93). He continued to note seizures and memory loss prevented him from working, but added weakness and high blood pressure as other factors, and did not note fatigue as he previously did. (Tr. 286).

At the October 2018 hearing, Plaintiff did not have a driver's license. (Tr. 51). He testified he stopped driving when his doctor told him he should stop because of his seizures. (Tr. 51-52). He said he relied on friends or public transportation to get around. (Tr. 52).

Plaintiff was not working at the time of the hearing but was helping to care for his mother. (Tr. 53). He told the ALJ his last paid work was fixing a neighbor's porch light about two years prior. (Tr. 54). His caretaking duties, which had been ongoing for the prior three years, took up too much time to work. *Id.* The ALJ cited income records to show Plaintiff last worked in 2016 as an electrician, but Plaintiff said he could not remember well enough to confirm this. (Tr. 54-55).

He testified he stopped working because his doctor said his seizures made him a risk to himself and others. (Tr. 55). Plaintiff testified he could not work because of seizures, memory problems, and fatigue. (Tr. 60). He was on his way to offer a friend an estimate on electrical work in March 2018 when he had a seizure. (Tr. 71-72). He occasionally provided these sorts of estimates to friends. (Tr. 72).

Plaintiff testified he had seizures every few months. (Tr. 61). He described his seizures as starting with a headache and ending with him in the hospital. (Tr. 61-62). These could occur while he was sleeping. (Tr. 62). When he suffers a seizure, Plaintiff testified it takes him hours to wake and he remains confused for around an hour after he wakes. (Tr. 62-63). Plaintiff took medication that lengthens the interval between seizures. (Tr. 64). Plaintiff testified he could not afford to refill this prescription. (Tr. 72).

Plaintiff testified he was becoming more forgetful, which he said might be because of his medication. (Tr. 64). His doctor told him to play solitaire to help his concentration and memory problems. (Tr. 65). He struggled to remember birthdays, common work procedures, and faces. (Tr. 66). He did not recognize his attorney at the hearing, which was about a month after he last saw her. *Id.*

Plaintiff testified fatigue had become a problem for him in the last two to three years. (Tr. 66-67). Taking care of his mother was enough to deplete him. (Tr. 67). He helped his mother with personal hygiene and washing, meal preparation, using the bathroom, administering medicine, keeping her company, and putting her to bed. (Tr. 68-69). He managed his own activities of daily living, including cooking, shopping, and household chores. (Tr. 70-71). If relieved of caregiving duties, Plaintiff would play cards every other week. (Tr. 71).

<u>Relevant Medical Evidence</u>

In April 2013, Plaintiff went to the emergency room complaining of right hip pain. (Tr. 362-63). Russell Platt, M.D., diagnosed Plaintiff with lumbar radiculopathy and right hip pain. (Tr. 362). An x-ray of the right hip revealed mild degenerative arthrosis. (Tr. 364).

In September 2014, Plaintiff had a CT scan of the brain, which was negative. (Tr. 333-34). He also went to the emergency room for a seizure. (Tr. 350-51). Hospital records indicate this was Plaintiff's first seizure. (Tr. 350). His physical examination was normal. *Id.* Plaintiff tested positive on a drug screen for cocaine. *Id.* Doctors told him not to drive for three months. *Id.*

Because of his seizure, Plaintiff underwent an electroencephalogram (EEG) in October 2014, which was normal. (Tr. 331).

Plaintiff did not see Dr. Platt again until November 2015, when he complained of memory problems and another seizure. (Tr. 337). Dr. Platt did not record any reported seizures between September 2014 and this November appointment. (Tr. 335-37).

In January 2016, Dr. Platt prescribed Dilantin for Plaintiff's seizures, and noted Plaintiff could not afford a neurologist. (Tr. 335).

Plaintiff's final recorded visit with Dr. Platt was in August 2016. *Id.* Plaintiff reported no seizures while taking his medication. *Id.*

On November 9, 2016, Dora Holling, of unknown qualifications, completed a "Seizure Questionnaire" in which she noted Plaintiff would bite his tongue, his eyes would roll, and he would have open convulsions. (Tr. 260). She reported Plaintiff had seizures once or twice a month. *Id.*

In December 2016, Joshua Magleby, Ph.D., conducted a consultative mental examination of Plaintiff. (Tr. 374-81). Dr. Magleby found Plaintiff's mental processing speed was somewhat

4

slowed. (Tr. 377). Plaintiff took the Wechsler Memory Scale-Fourth Edition memory test and performed in the "borderline range across the board". (Tr. 379). Dr. Magleby diagnosed Plaintiff with unspecified neurocognitive disorder and adjustment disorder with chronic depressed mood. *Id.* He noted Plaintiff's "recall problems are related to either his seizure disorder, history of CVA, or both, but without medical evidence a more formal diagnosis cannot be made at this time". *Id.*

Also in December 2016, Plaintiff underwent a consultative physical exam from Chimezie Amanambu, M.D. (Tr. 387-89). Dr. Amanambu noted Plaintiff had generalized tonic-clonic convulsions after a 2012 stroke, and Plaintiff reported an increased frequency for his seizures. (Tr. 387). Plaintiff had a normal physical examination including normal neurological functions and gait. (Tr. 388). His physical examination revealed Plaintiff could sit, stand, walk, kneel, bend, twist, crawl, carry, lift and reach, and his hearing and speech were not affected. (Tr. 389). He assessed Plaintiff with epileptic seizures. *Id.*

In March 2018, Plaintiff appeared at the Cleveland Clinic Akron General emergency room where he was diagnosed with noncompliance and breakthrough seizures. (Tr. 394, 402, 409). Plaintiff reported not refilling his prescription. (Tr. 409). His last seizure was about a year prior. *Id.* A CT scan revealed decreased attenuation of the right thalamus consistent with an infarct along with evidence of focal areas with decreased attenuation. (Tr. 416). The leading diagnostic consideration was chronic microvascular ischemic changes. *Id.*

Opinion Evidence

In December 2016, Dr. Magleby opined Plaintiff's ability to understand, remember, and carry out simple oral instructions is "similar to other adults the same age based on this exam." (Tr. 380). Dr. Magleby also opined Plaintiff's ability to maintain attention and concentration "seemed somewhat impaired compared to other adults the same age." *Id.* Plaintiff's ability to follow more

5

complex instructions or directions was "somewhat impaired for age expectations", as was his ability to perform multi-step tasks. Plaintiff's memory "appeared somewhat impaired for both visual and verbal information." *Id.* Dr. Magleby opined Plaintiff could perform simple repetitive tasks, "based on [his] mental status and history, [which] appeared fairly average." *Id.*

Also in December 2016, Dr. Amanambu opined Plaintiff's seizures made him a danger to himself and others, and that he was unable to work full time at even a sedentary level. (Tr. 389).

In January 2017, State agency physician Diane Manos, M.D., reviewed Plaintiff's physical health records. (Tr. 90-92). She opined Plaintiff had no exertional restrictions except that he should not drive, be around unprotected heights, or operate heavy machinery. (Tr. 91-92).

Also in January 2017, State agency psychiatrist Aracelis Rivera, Psy.D., reviewed Plaintiff's mental health records. She found Plaintiff moderately limited in several areas of understanding and memory, but found him capable of understanding and remembering simple instructions. (Tr. 93). She also opined Plaintiff had moderate limitations in sustained concentration and persistence but found he could perform simple, repetitive tasks. *Id.* She opined Plaintiff could interact superficially despite his moderate limitations in his social interaction abilities. (Tr. 93-94). Finally, she opined Plaintiff had moderate limitations in some aspects of adaptation, but that he can adapt to a static work setting. (Tr. 94).    In April 2017, State agency physician Teresita Cruz, M.D., reviewed Plaintiff's physical records on reconsideration. (Tr. 122-23). She adopted the same limitations as Dr. Manos. *Id.*

Also in April 2017, State agency psychologist Denise Rabold, Ph.D., reviewed Plaintiff's medical records and found most of the same restrictions as Dr. Rivera. (Tr. 124-25). Dr. Rabold added Plaintiff could only perform simple tasks that have no demand for fast pace or high

6

production rates, that he could interact superficially and infrequently with others, and that he could work in a predictable environment where any changes would be easily explained. (Tr. 124-25).

In May 2017, Dr. Platt wrote a letter concerning Plaintiff's disability. (Tr. 391-92). He wrote he has known Plaintiff since his teenage years, and that he ordered a neurological consultation that Plaintiff did not complete due to cost. (Tr. 391). Based on his ongoing knowledge of Plaintiff, Dr. Platt "detected flaws in [Plaintiff's] memory and judgment" severe enough to preclude work. *Id.*

VE Testimony

A VE appeared and testified at the administrative hearing. (Tr. 75-80). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 19, 76-77. The VE responded such an individual could perform jobs such as laundry worker, marker, and packer. (Tr. 76).

ALJ Decision

In her November 9, 2018 decision, the ALJ found Plaintiff met the insured status requirements through December 31, 2021. (Tr. 12). She found Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. *Id.* The ALJ concluded Plaintiff had severe impairments of seizure disorder, unspecified neurocognitive disorder, and chronic adjustment disorder. (Tr. 13). The ALJ found, however, that none of these impairments – individually or in combination – met or medically equaled the severity of a listed impairment. (Tr. 15). The ALJ then found Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can never climb ladders, ropes, or scaffolds, and must avoid all exposure to workplace hazards such as unprotected heights, moving

mechanical parts, and commercial driving. He can perform simple routine tasks, but not at a production rate pace and not with strict production quotas. He can adapt to occasional changes in the work setting or routine so long as they are explained in advance and implemented gradually.

(Tr. 19). The ALJ then concluded Plaintiff could not perform any past relevant work. (Tr. 29). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined a significant number of jobs existed in the national economy that Plaintiff can perform. (Tr. 30). Therefore, the ALJ found Plaintiff not disabled. (Tr. 31).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two main arguments. First, he argues the ALJ erred by not considering his strokes a severe physical impairment. (Doc. 12, at 13-14). Second, he alleges the ALJ erred in

9

assessing his RFC by not giving more weight to the more restrictive opinion evidence provided by the treating physician, consultative examiners, and State agency reviewers. *Id.* at 9-16. For the following reasons, the undersigned finds no error and recommends affirming the ALJ's decision.

Physical Impairment

Plaintiff alleges the ALJ erred by questioning whether Plaintiff suffered from cerebrovascular accidents (CVA) or transient ischemic attacks (TIA). (Doc. 12, at 13-14). Notably, Plaintiff does not explain how this alleged error had any impact on the ALJ's ultimate decision to not find Plaintiff disabled. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). When Plaintiff fails to develop a full argument, the court can decline to "formulate arguments on [a claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record . . ." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Further, this argument is undeveloped, because a diagnosis alone says nothing about the severity of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). A disabling impairment is one which "is so *severe* that it meets or equals a set of criteria in the Listing of Impairments in appendix 1 of this subpart or which, when considered with your age, education, and work experience, would result in a finding that you are disabled…" 20 C.F.R. §§ 404.1511(a), 416.911(a) (emphasis added). Assessing severity is an essential component of determining disability, and Plaintiff does not show what the consequence is of the ALJ's decision not to consider CVA as a severe physical impairment. Because Plaintiff does not identify how any alleged error impacts the ultimate question of disability, the undersigned finds no reversible error in this analysis.

10

Opinion Evidence

*Dr. Platt*

Plaintiff argues the ALJ erred when she assigned little weight to Dr. Platt's opinion concerning Plaintiff's memory problems. (Doc. 12, at 10). For the following reasons, the undersigned finds the ALJ's decision supported by substantial evidence.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, she must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion,

11

the consistency of the opinion with the record as a whole, and the specialization of the treating

source. *Id.* A treating physician's opinion should not be dismissed solely based on its

incompatibility with other evidence of record. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543,

552 (6th Cir. 2010); *Gayheart*, 710 F.3d at 377 (conflicting evidence must be more than other,

non-treating physicians' opinions).

>   In this case, the ALJ set forth her assessment of Dr. Platt's opinion:

>   Turning to the memory difficulties, Dr. Platt also stated in his May 2017 letter that
>   he "advised [Mr. Springer] to apply for disability" in that regard, and he stated that
>   he has known Mr. Springer for "a long time" and had "detected flaws in his memory
>   and his judgment." He closed his letter by stating "I do not feel that he is capable
>   of engaging in gainful employment[,] and his prognosis is problematic." Neither
>   "controlling weight" nor any special evidentiary significance was given to Dr.
>   Platt's last statement about the claimant being incapable of engaging in gainful
>   employment because, like the examining physician's statement, it regards a
>   statement only about the issue of disability that is reserved to the Commissioner.
>   Moreover, it is altogether vague and was based entirely upon the claimant's
>   subjective reports about having memory problems in direct relation to his job tasks,
>   and his purported clinical "detection" of problems in memory and judgment are
>   simply not corroborated by his few 2015 and 2016 office notes (*cf.* Ex. 1F/5-6).
>   Overall, **little weight** was given to Dr. Platt's May 2017 statements regarding the
>   disabling effects of memory difficulties because they are poorly supported by his
>   own records, and because they are not consistent with the other substantial evidence
>   in the case record that includes the moderately limited memory functions gauged
>   on more reliable clinical observations and WMS-IV testing by Dr. Magleby, the
>   claimant's substantial daily activities that include attending to all needs of his
>   mother, and his testimony about engaging in some intermittent work for friends and
>   others involving estimates of electrical work on residential properties.

(Tr. 27) (emphasis in original).

>   First, the ALJ recognized Dr. Platt's status as a treating physician, one factor under the

regulations. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Second, she noted Dr. Platt's opinion

was not supported by his own treatment notes, and was inconsistent with other aspects of the

record, again addressing required regulatory factors. 20 C.F.R. §§ 404.1527(c)(3)-(4),

416.927(c)(3)-(4). The ALJ noted, in an earlier discussion of his opinion, that Dr. Platt provided

no formal testing or examination of Plaintiff's memory, instead recommending conservative, non-medical interventions like playing solitaire and performing other mind exercises. (Tr. 23) (citing Tr. 65, 335[1]). Prescribing conservative treatment can serve as a required good reason for discounting a treating source's more restrictive opinion. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016). Dr. Platt noted he did not refer Plaintiff for a neurological consultation based on Plaintiff's inability to afford it. (Tr. 391). This does weaken the ALJ's provided reason for discounting Dr. Platt's opinion. However, as there are other reasons to discount the opinion, any error would be harmless. *See Davis v. Astrue*, 2009 WL 2901216, at *1 (E.D. Ky.) ("In sum, the ALJ's failure to consider Davis's ability to afford medical treatment was a harmless error because the ALJ based [Plaintiff's] credibility on various factors, not just on [Plaintiff's] lack of frequent medical treatment.").

Further, the ALJ's consideration of Dr. Platt's lack of objective medical evidence supporting his opinion, and that opinion's inconsistency with other aspects of the record, are valid reasons for discounting Dr. Platt's opinion. (Tr. 27); 20 C.F.R. §§ 404.1527 (c)(3), 416.927 (c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Plaintiff identifies no mental health treatment records in his brief, leaving the consultative examiner's report as the lone piece of objective medical evidence as to Plaintiff's memory problems. (Tr. 374-81). That examination showed Plaintiff's memory was "well below expectations" and his working memory was in the low average range. (Tr. 379). These examination

---

1. Dr. Platt's notes are difficult to read. However, the records do not show further neurological testing was ordered, and Plaintiff does not suggest the ALJ's reading of these records is inaccurate.

13

results, contrasted with Dr. Platt's opinion that Plaintiff cannot work at all due to his memory problems, permit the ALJ to reasonably conclude Dr. Platt's opinion should be discounted while still finding Plaintiff's memory problems left him moderately limited in understanding, remembering, or applying information. *See* Tr. 16-17, 19 (limiting Plaintiff to simple, routine tasks, and only occasional changes in the work setting or routine).

Finally, the ALJ properly relied on Plaintiff's activities of daily living to discount Dr. Platt's extreme opinion. An ALJ may consider a Plaintiff's activities of daily living when deciding what weight to assign a physician's opinion. *See Doornbos v. Comm'r of Soc. Sec.*, 2017 WL 8948744, at *4 (6th Cir.) (upholding activities of daily living as substantial evidence for discounting opinion). Plaintiff actively cared for his mother, including helping her take her medicine, cooking meals, and grocery shopping. (Tr. 68-71). Plaintiff also managed his own finances and read for entertainment. (Tr. 263-69). The ALJ reasonably reviewed these records and determined they were inconsistent with the complete inability to work that Dr. Platt opined for Plaintiff. (Tr. 17, 27).

As Plaintiff notes, Dr. Platt was concerned about Plaintiff's memory during a visit on November 13, 2015 and noted his concern that Plaintiff had a cognitive impairment on August 23, 2016. (Tr. 335). But, as set forth above, the ALJ also cited contrary evidence in the record to support her conclusion. *See* Tr. 21, 23, 27. This Court's role is not to reweigh the evidence, but merely to ensure the ALJ's opinion is supported by substantial evidence, a low hurdle to clear. Even if a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Because the ALJ provided good reasons for discounting Dr. Platt's opinion, and substantial

14

evidence supported that assessment, the undersigned finds no reversible error in the ALJ's treatment of Dr. Platt's memory opinion.

*Consultative Examiners*

Plaintiff briefly attacks the ALJ's handling of both consultative examiners' opinions. Both could be deemed waived, as he does not attempt to develop any substantial argument. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

Additionally and alternatively to finding Plaintiff's arguments waived, the undersigned will address these brief arguments on the merits.

### Dr. Amanambu

Plaintiff argues the ALJ erred by not adopting Dr. Amanambu's opinion that Plaintiff cannot work, as well as not adopting his opinion that Plaintiff could only perform sedentary work. Neither argument has merit. First, the ALJ properly disregarded Dr. Amanambu's opinion concerning Plaintiff's ability to work. (Tr. 26). The final issue of whether a claimant is disabled is reserved for the ALJ herself. 20 C.F.R. §§ 404.1527(d) (1-3), 416.927(d) (1-3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner.").

Second, the ALJ discounted Dr. Amanambu's sedentary work restriction because "it is vague and conclusory, because it is unsupported by his findings, [and] because he failed to ask the claimant about compliance with seizure-preventative medication". (Tr. 26). Dr. Amanambu reported Plaintiff could sit, stand, walk, kneel, bend, twist, crawl, carry, lift, and reach without restriction. (Tr. 389). The sedentary work restriction opined by Dr. Amanambu means Plaintiff

15

would be limited in his ability to lift, carry, walk, and stand, which his own assessment does not support. *Id.*; 20 C.F.R. §§ 404.1567(a), 416.967(a). Dr. Amanambu relied entirely on Plaintiff's seizure disorder to support his severe restrictions, but throughout the opinion the ALJ questioned the record support of the severity of Plaintiff's seizure disorder. *See* Tr. 17 ("There is no direct medical evidence showing that he has had generalized seizures once a month or once every two months, or more frequently, for the specified continuous durations of three to four months minimally."); Tr. 18 ("Mr. Springer has not been compliant with taking his prescribed seizure-preventative medications . . ."); Tr. 21 ("Dr. Platt did not record any reported seizures between the initial event in late September 2014 and November 2015 return visit, and his records do not show any medications prescribed for the seizures . . . More directly, Dr. Platt's last follow-up visit with the claimant in August 2016 document that he had "no seizures" when compliantly taking the Dilantin (Ex 1F/5)."). Inconsistency with the record as a whole is a legitimate reason to discount an examining source's opinion. 20 C.F.R. §§ 404.1527 (c)(4), 416.927 (c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). And the ALJ found, and supported with substantial evidence, that the record as a whole is inconsistent with severe restrictions stemming from Plaintiff's seizures Therefore, the undersigned finds the ALJ did not err in weighing Dr. Amanambu's opinion.

### *Dr. Magleby*

Second, Plaintiff alleges the ALJ erred by dismissing Dr. Magleby's opinion as vague. (Doc. 12, at 10-11). The ALJ, in assessing Dr. Magleby's opinion, noted:

> No great weight could be given to the examining psychologist's opinion because of his vague terminology used for rating limitations in the four areas of work-related mental functioning, and because he did not provide any positively retained abilities other than performing simple, repetitive work tasks at a "fairly average" level. However, since they are consistent with his own findings on clinical interview and

16

mental status examination of the claimant, account for the moderately impaired memory functions shown on the WMS-IV test, and do have strong supportability through his express consideration of those medical findings and the claimant's reported history, they received some weight when finding moderately significant limitations in three of the four broad areas of mental functioning.

(Tr. 28). The only attack Plaintiff raises is that Dr. Magleby's opinion was not vague, as the ALJ said it was. Vagueness, or the failure to propose specific functional limitations, can be a reason to discount a medical opinion. *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018). Dr. Magleby's opinion lacked specific functional limitations. *See* Tr. 380. For example, he described Plaintiff's ability to understand, remember, and carry out simple oral instructions as "similar compared to other adults the same age based on this exam." *Id.* He similarly opined Plaintiff's ability to maintain attention and concentration "seemed somewhat impaired compared to other adults the same age." *Id.* These opinions lack the specificity required for the ALJ to determine "the most [Plaintiff] can still do despite [Plaintiff's] limitations". 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Therefore the ALJ's assessment that the opinion was vague is not erroneous.

### State Agency Psychologists

Plaintiff argues the ALJ failed in her consideration of the various moderate limitations opined by the State agency psychologists. (Doc. 12, at 13-17). He frames the argument in two ways: first, as a failure by the ALJ to properly consider the opinions of the State agency reviewers, and second, as a failure by the ALJ to meet her burden at Step Five. The second argument, despite Plaintiff's attempt at a clever, burden-shifting framing, is the same as the first. *See Taylor v. Berryhill*, 2019 WL 1261124, at *5 (W.D. Ky.) ("[Plaintiff's] one-paragraph step five argument is

essentially a rehash of his step four arguments. As discussed above, the ALJ did not err at step four.").

Plaintiff argues Dr. Magleby's testing supports the opinions of the State agency reviewing psychologists. The ALJ, in assessing their opinions, wrote:

> . . . State agency psychological consultant Aracelis Rivera, Psy.D., reviewed Dr. Magleby's report of consultative examination along with the other initially available evidence. Dr. Rivera assessed a number of moderate limitations in specific work-related mental abilities across all four areas of mental functioning, thus including "social interactions," and assessed a mental residual functional capacity to understand and remember only simple work instructions, to maintain sufficient attention and concentration to perform simple routine tasks, to interact superficially with others, and to adapt to a static work setting (Ex. 1A-2A/11-12).
>
> . . . State agency consultant Denise Rabold, Ph.D., offered a similar assessment of moderately limited mental abilities in broad and specific areas of the claimant's "understanding and memory," "sustained concentration and persistence," social interactions, and "adaptation." However, Dr. Rabold expanded upon Dr. Rivera's assessment of mental residual functional capacity by adding that he can perform only simple tasks that have no demands for fast [pace] or high production rates, that he can interact superficially but also "infrequently" with others, and that he can work in a predictable environment where any changes would be easily explained. (Ex. 5A-6A/10-11).
>
> Dr. Rabold's assessment received **significant partial weight** in relation to the limitations to understanding, remembering, and carrying out only simple, routine tasks that do not involve strict production quotas or production [rate] of pace and for adapting to the stresses and pressures of only occasional changes in a work setting or routine that would be explained in advance and implemented gradually. Those aspects of her assessment are consistent with the December 2016 consultative psychological examination and its clinical observations for some moderately impacted memory functions, some irritability and agitation that did decline over the course of the clinical interview, and did not impede performance on the Wechsler intelligence and memory testing, and the claimant's written reports and verbal account (to Dr. Magleby) about substantially intact daily activities. Less weight was given to Dr. Rabold's and Dr Rivera's assessment for moderate limitations caused by the adjustment disorder in terms the frequency and quality of social interactions with others during a workday. Those are tenuously supported by Dr. Magleby's narrative assessment, are not consistent with the examiner's statement that the claimant later recognized and apologized for his agitated response to a specific question, and have otherwise very weak support for any

> evidence from a treating medical source or the claimant's own daily activities that
> do entail intact social relationships with friends and family.

(Tr. 28) (emphasis in original). Plaintiff offers, as "key limitations" from the State agency reviewers left out of the ultimate RFC, that he could not sustain an ordinary routine without special supervision and could not remember locations and work-like procedures. (Doc. 12, at 15). Plaintiff mischaracterizes the State agency opinions, which found Plaintiff had moderate limitations in his ability to sustain an ordinary routine without special supervision and in his ability to remember locations and work-like procedures. *See* Tr. 93, 108. Thus, when compared to the actual restrictions opined by the State agency reviewers, the ALJ's assessment is supported by substantial evidence.

As to the first restriction, the ALJ limited Plaintiff to jobs that only occasionally change the work setting or routine, only do so gradually, and explain changes in advance. (Tr. 19). This reasonably accounts for the restriction opined by the State agency reviewers. *See Thompson v. Comm'r of Soc. Sec.*, 2017 WL 3446490, at *7 (S.D. Ohio) ("[T]he RFC specifically recognizes Plaintiff's need for additional supervision and guidance, by limiting Plaintiff to working in a setting that "imposes no more than occasional changes in the work routine, explained and/or demonstrated in advance of implementation.").

As to the second restriction, the ALJ discounted the alleged severity of Plaintiff's memory problems, and that discounting was supported by substantial evidence, as discussed above. Dr. Magleby's testing, relied on by Plaintiff to support his argument that more memory restrictions belong in the RFC, showed memory functions "well below expectations". (Tr. 379). The ALJ determined Plaintiff has moderate limitations in his ability to understand, remember, and apply information, based entirely on his limited memory. (Tr. 16-17). Further, in the RFC, the ALJ limited Plaintiff to simple, routine tasks, with only occasional changes in the work setting and

19

without strict production quotas or a production rate pace to account for Plaintiff's memory limitations. (Tr. 19). Despite Plaintiff's allegation that the ALJ did not consider these moderate limitations (Doc. 12, at 13), the undersigned finds the ALJ appropriately considered these restrictions, and developed an RFC supported by substantial evidence.

Finally, Plaintiff alleges the ALJ discounted Plaintiff's memory problems solely based on a lack of objective medical evidence resulting from Plaintiff's inability to afford treatment. (Doc. 12, at 16-18). However, Dr. Magleby completed a consultative examination to remedy the absent objective medical evidence. (Tr. 374) ("This psychiatric examination is to be used as medical evidence; completed exclusively for the Division of Disability Determination."). As discussed above, the ALJ reasonably determined that the objective medical evidence from that examination did not support finding Plaintiff disabled. Further, Plaintiff's robust activities of daily living, identified by the ALJ as evidence a more extreme restriction based on memory was not necessary, are not influenced by any inability to afford medical treatment. While an inability to afford medical treatment should be considered by the ALJ, any failure to do so by the ALJ is harmless, because the ALJ discounted Plaintiff's symptoms based, in part, on his activities of daily living. *See Davis*, 2009 WL 2901216, at *1.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

20

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).