UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | |
|---|---|
| Mark A. Springer, : | |
| : | Case No. 5:19-cv-2562 |
| Plaintiff, : | |
| : | OPINION & ORDER |
| : | [Resolving Docs. 17 & 18] |
| vs. : | |
| : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On November 1, 2019, Plaintiff Mark A. Springer filed a complaint seeking judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits and supplemental security income.[1] The Court referred the matter to former Magistrate Judge James R. Knepp II, now a District Judge of this Court.

On October 8, 2020, Judge Knepp issued a Report and Recommendation ("R&R") recommending that this Court affirm the Commissioner's decision.[2] Plaintiff Springer objects to the R&R,[3] and the Commissioner replies.[4] For the reasons stated below, this Court **OVERRULES** the Plaintiff Springer's objections, **ADOPTS** the R&R, and **AFFIRMS** the Commissioner's decision.

I. BACKGROUND

Plaintiff Springer, now 61, worked as an electrician for many years.[5] On October 14, 2016, Plaintiff filed disability insurance and supplemental security income claims with

---

[1] Doc. 1.
[2] Doc. 16.
[3] Doc. 17.
[4] Doc. 18.
[5] Doc. 10 at 33.

Case No. 5:19-cv-2562
Gwin, J.

the Commissioner.[6] With the claims, Springer said that he had been disabled and unable to work since May 1, 2015.[7] Plaintiff Springer's claim was first denied on January 9, 2017.[8] Plaintiff filed for reconsideration, and the original denial was affirmed on February 10, 2017.[9]

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 5, 2018.[10] At the hearing, Springer testified that he had stopped working as an electrician because his seizures, which occurred "every few months," made him a danger to himself and others.[11] Springer also described fatigue and memory problems that made it hard for him to remember birthdays, work procedures, and faces.[12]

However, at the hearing, Springer also testified that he was a fulltime caretaker for his elderly mother.[13] In that caretaker role, Springer helped his mother with personal hygiene and washing, meal preparation, using the bathroom, administering medicine, keeping her company, and putting her to bed.[14] On top of that, Springer testified that he does all the shopping and chores for the household and maintains personal relationships with his long-time girlfriend, three adult children, and friends with whom he plays cards.[15]

In addition to hearing Springer's testimony, the presiding ALJ also considered medical evidence, which the R&R summarized as follows:

> In April 2013, Plaintiff went to the emergency room complaining of right hip pain. (Tr. 362-63). Russell Platt, M.D., diagnosed Plaintiff with lumbar

---

[6] *Id.* at 215, 217.
[7] *Id.* at 215.
[8] *Id.* at 149.
[9] *Id.* at 161.
[10] *Id.* at 48.
[11] *Id.* at 65.
[12] *Id.* at 70.
[13] *Id.* at 72–75.
[14] *Id.*
[15] *Id.* at 380.

-2-

Case No. 5:19-cv-2562
Gwin, J.

radiculopathy and right hip pain. (Tr. 362). An x-ray of the right hip revealed mild degenerative arthrosis. (Tr. 364).

In September 2014, Plaintiff had a CT scan of the brain, which was negative. (Tr. 333-34). He also went to the emergency room for a seizure. (Tr. 350-51). Hospital records indicate this was Plaintiff's first seizure. (Tr. 350). His physical examination was normal. *Id.* Plaintiff tested positive on a drug screen for cocaine. *Id.* Doctors told him not to drive for three months. *Id.*

Because of his seizure, Plaintiff underwent an electroencephalogram (EEG) in October 2014, which was normal. (Tr. 331).

Plaintiff did not see Dr. Platt again until November 2015, when he complained of memory problems and another seizure. (Tr. 337). Dr. Platt did not record any reported seizures between September 2014 and this November appointment. (Tr. 335-37).

In January 2016, Dr. Platt prescribed Dilantin for Plaintiff's seizures, and noted Plaintiff could not afford a neurologist. (Tr. 335).

Plaintiff's final recorded visit with Dr. Platt was in August 2016. *Id.* Plaintiff reported no seizures while taking his medication. *Id.*

On November 9, 2016, Dora Holling, of unknown qualifications, completed a "Seizure Questionnaire" in which she noted Plaintiff would bite his tongue, his eyes would roll, and he would have open convulsions. (Tr. 260). She reported Plaintiff had seizures once or twice a month. *Id.*

In December 2016, Joshua Magleby, Ph.D., conducted a consultative mental examination of Plaintiff. (Tr. 374-81). Dr. Magleby found Plaintiff's mental processing speed was somewhat slowed. (Tr. 377). Plaintiff took the Wechsler Memory Scale-Fourth Edition memory test and performed in the "borderline range across the board". (Tr. 379). Dr. Magleby diagnosed Plaintiff with unspecified neurocognitive disorder and adjustment disorder with chronic depressed mood. *Id.* He noted Plaintiff's "recall problems are related to either his seizure disorder, history of CVA, or both, but without medical evidence a more formal diagnosis cannot be made at this time". *Id.*

Also in December 2016, Plaintiff underwent a consultative physical exam from Chimezie Amanambu, M.D. (Tr. 387-89). Dr. Amanambu noted Plaintiff had generalized tonic-clonic convulsions after a 2012 stroke, and Plaintiff reported an increased frequency for his seizures. (Tr. 387). Plaintiff had a normal physical examination including normal neurological functions and gait. (Tr. 388). His physical examination revealed Plaintiff could sit, stand, walk, kneel, bend, twist, crawl, carry, lift and reach, and his hearing and

Case No. 5:19-cv-2562
Gwin, J.

speech were not affected. (Tr. 389). He assessed Plaintiff with epileptic seizures. *Id.*

In March 2018, Plaintiff appeared at the Cleveland Clinic Akron General emergency room where he was diagnosed with noncompliance and breakthrough seizures. (Tr. 394, 402, 409). Plaintiff reported not refilling his prescription. (Tr. 409). His last seizure was about a year prior. *Id.* A CT scan revealed decreased attenuation of the right thalamus consistent with an infarct along with evidence of focal areas with decreased attenuation. (Tr. 416). The leading diagnostic consideration was chronic microvascular ischemic changes. *Id.*

Opinion Evidence

In December 2016, Dr. Magleby opined Plaintiff's ability to understand, remember, and carry out simple oral instructions is "similar to other adults the same age based on this exam." (Tr. 380). Dr. Magleby also opined Plaintiff's ability to maintain attention and concentration "seemed somewhat impaired compared to other adults the same age." *Id.* Plaintiff's ability to follow more complex instructions or directions was "somewhat impaired for age expectations", as was his ability to perform multi-step tasks. Plaintiff's memory "appeared somewhat impaired for both visual and verbal information." *Id.* Dr. Magleby opined Plaintiff could perform simple repetitive tasks, "based on [his] mental status and history, [which] appeared fairly average." *Id.*

Also in December 2016, Dr. Amanambu opined Plaintiff's seizures made him a danger to himself and others, and that he was unable to work full time at even a sedentary level. (Tr. 389).

In January 2017, State agency physician Diane Manos, M.D., reviewed Plaintiff's physical health records. (Tr. 90-92). She opined Plaintiff had no exertional restrictions except that he should not drive, be around unprotected heights, or operate heavy machinery. (Tr. 91-92).

Also in January 2017, State agency psychiatrist Aracelis Rivera, Psy.D., reviewed Plaintiff's mental health records. She found Plaintiff moderately limited in several areas of understanding and memory, but found him capable of understanding and remembering simple instructions. (Tr. 93). She also opined Plaintiff had moderate limitations in sustained concentration and persistence but found he could perform simple, repetitive tasks. *Id.* She opined Plaintiff could interact superficially despite his moderate limitations in his social interaction abilities. (Tr. 93-94). Finally, she opined Plaintiff had moderate limitations in some aspects of adaptation, but that he can adapt to a static work setting. (Tr. 94). In April 2017, State agency physician Teresita

-4-

Case No. 5:19-cv-2562
Gwin, J.

Cruz, M.D., reviewed Plaintiff's physical records on reconsideration. (Tr. 122-23). She adopted the same limitations as Dr. Manos. *Id.*

Also in April 2017, State agency psychologist Denise Rabold, Ph.D., reviewed Plaintiff's medical records and found most of the same restrictions as Dr. Rivera. (Tr. 124-25). Dr. Rabold added Plaintiff could only perform simple tasks that have no demand for fast pace or high production rates, that he could interact superficially and infrequently with others, and that he could work in a predictable environment where any changes would be easily explained. (Tr. 124-25).

In May 2017, Dr. Platt wrote a letter concerning Plaintiff's disability. (Tr. 391-92). He wrote he has known Plaintiff since his teenage years, and that he ordered a neurological consultation that Plaintiff did not complete due to cost. (Tr. 391). Based on his ongoing knowledge of Plaintiff, Dr. Platt "detected flaws in [Plaintiff's] memory and judgment" severe enough to preclude work. *Id.*[16]

Having considered Plaintiff Springer's medical history, the ALJ heard testimony from a vocational expert. The ALJ asked the vocational expert to assume an individual of Springer's age and educational background who had the following limitations:

(1) "[N]o exertional limitations," but who could "never climb ladders, ropes, or scaffolds, and must avoid all exposure to workplace hazards such as unprotected heights, moving mechanical parts, and commercial driving."[17]

(2) Could "perform simple, routine tasks, but not at a production-rate pace, and not with strict production quotas" and who could "adapt to occasional changes in the work setting or routine so long as they are explained in advance and implemented gradually."[18]

(3) "[C]an interact occasionally and superficially with others, with 'superficial' defined to mean 'no interactions in which the individual is responsible for sales, negotiation, arbitration, confrontation, conflict resolution, or the safety or welfare of others.'"[19]

---

[16] Doc. 16 at 4–7.
[17] Doc. 10 at 80.
[18] *Id.* at 81.
[19] *Id.* at 82.

-5-

Case No. 5:19-cv-2562
Gwin, J.

While the vocational expert found that an individual with these limitations could not perform work as an electrician, as Plaintiff Springer previously had, such an individual could work as a laundry worker, marker, or packer, which together represented over 200,000 positions in the national labor market.[20]

On November 9, 2018, the ALJ issued an opinion denying Plaintiff Springer's claim. The ALJ agreed that Springer's memory problems and occasional seizures rendered him unable to work as an electrician.[21] However, the ALJ found that Springer had no exertional limitations and retained enough functional memory to perform simple tasks that did not involve demanding quotas, frequent, complex performance requirement changes, or exposure to workplace hazards dangerous to seizure-suffering individuals, such as unprotected heights, moving mechanical parts, and commercial driving.[22]

Using the vocational expert's testimony, the ALJ accordingly found that Plaintiff Springer had residual functional capacity to perform thousands of jobs in the national economy.[23]

In making this finding, the ALJ concluded that Springer had moderate limitations in understanding, remembering, and applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, with only a mild limitation to his ability to interact with others.[24]

---

[20] *Id.* at 34.
[21] *Id.* at 33.
[22] *Id.* at 80.
[23] *Id.* at 34.
[24] *Id.* at 19–22.

-6-

Case No. 5:19-cv-2562
Gwin, J.

Of the medical opinion testimony, the ALJ gave little weight to the letter from Dr. Platt indicating that Dr. Platt had "detected flaws in [Springer's] memory and judgment" severe enough to preclude gainful employment.[25] The ALJ found important that Dr. Platt's letter relied on Springer's subjective reports about his memory as opposed to the more empirical clinical testing performed by Dr. Magleby.[26] The ALJ also discounted as conclusory Dr. Chimezie Amanambu's opinion that Springer could not perform even sedentary work due to his seizures.[27]

On the other hand, the ALJ gave significant weight to the opinions of several state agency medical consultants—Drs. Diane Manos, Teresita Cruz, Aracelis Rivera, and Denise Rabold—who found that Springer had only moderately limited mental abilities.[28]

The most damaging piece of evidence for Plaintiff Springer's claim, however, was his own ALJ hearing testimony. Springer testified that, as "full time" caretaker for his mother for the preceding three years, "he prepares breakfast and other meals for her throughout the day, provides physical assistance for bathing and for toileting needs, administers her medications to her throughout the day, keep[s] her company, and help[s] her to bed at night."[29]

As the ALJ put it, "the claimant has described numerous daily activities that are simply not as limited as would be reasonably expected by the alleged severity of the memory difficulties, physical fatigue, and seizures." "[T]hese activities," continued over a three-year

---

[25] *Id.* at 31.
[26] *Id.*
[27] *Id.* at 30.
[28] *Id.* at 31.
[29] *Id.* at 28.

Case No. 5:19-cv-2562
Gwin, J.

period, the ALJ stated, "strongly suggest that [Springer] would be capable of engaging in sustained work activity within the residual functional capacity set forth above."[30]

Based on this evidence, the ALJ concluded that Plaintiff Springer could sustain gainful employment and thus was not "disabled" for disability insurance and supplemental security income purposes.[31] The ALJ accordingly denied Springer's claims.[32]

On September 5, 2019, the Appeals Council affirmed the ALJ's decision.[33] On November 1, 2019, Springer sought review of the Commissioner's decision in this Court.[34] On October 8, 2020, Judge Knepp issued an R&R recommending that this Court affirm the Commissioner's decision.[35]

On October 22, 2020, Plaintiff Springer filed R&R objections, claiming that the ALJ's decision should be reversed because (1) the decision is self-contradictory for relying on Dr. Magleby's clinical findings to discredit Dr. Platt's opinion while also referring to Dr. Magleby's opinion as "vague"; and (2) the decision failed to impose specific limitations on the mental tasks that Springer could perform.[36] The Commissioner disagrees.[37]

## II. LEGAL STANDARD

*II.A   Standard for Establishing Disability*

To establish disability under the Social Security Act, a claimant must show "inability to engage in any substantial gainful activity by reason of any medically determinable physical

---

[30] *Id.* at 29.
[31] *Id.* at 35.
[32] *Id.*
[33] *Id.* at 5.
[34] Doc. 1.
[35] Doc. 16.
[36] Doc. 17.
[37] Doc. 18.

Case No. 5:19-cv-2562
Gwin, J.

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[38] The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.[39]

### II.B. Substantial Evidence Review

The Federal Magistrates Act requires a district court to conduct *de novo* review of the claimant's R&R objections.[40] Both the Magistrate and this Court's review of the ALJ's decision is limited to whether the that decision was "supported by substantial evidence" and "made pursuant to proper legal standards."[41] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[42] Put differently, it is "more than a mere scintilla of evidence," "but less than a preponderance."[43] When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would arrive at a different conclusion than the ALJ.[44] On review, this Court may not resolve evidentiary conflicts or decide credibility questions.[45]

### III. ANALYSIS

First, Plaintiff Springer argues that the ALJ's opinion contradicted itself regarding whether Dr. Magleby's opinion was vague. Specifically, the ALJ's opinion said that:

---

[38] *See* 42 U.S.C. § 423(d)(1)(A).
[39] *See* 42 U.S.C. § 423(d)(2)(A).
[40] 28 U.S.C. § 636(b)(1).
[41] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g)).
[42] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[43] *Brown v. Comm'r of Soc. Sec.*, 814 F. App'x 92, 95 (6th Cir. 2020) (citing *Biestek*, 139 S. Ct. at 1154; then citing *Rogers*, 486 F.3d at 241).
[44] *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009).
[45] *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Case No. 5:19-cv-2562
Gwin, J.

> Dr. Platt's May 2017 statements regarding the disabling effect of memory difficulties [were given little weight] because they are poorly supported by [Dr. Platt's] own records, and because they are not consistent with the other substantial evidence in the case record that includes the moderately limited memory functions *gauged on more reliable clinical observations and WMS-IV testing by Dr. Magleby.*[46]

Then, on the very next page of the opinion, the ALJ said:

> No great weight could be given to [Dr. Magleby's] opinion because of his vague terminology used for rating limitations in the four areas of work-related mental functioning, and because he did not provide any positively retained abilities other than performing simple, repetitive work tasks at a 'fairly average' level. However, since they are consistent with [Dr. Magleby's] own findings on clinical interview and mental status examination of the claimant, account for the moderately impaired memory functions shown on the WMS-IV test, and do have strong supportability through his express consideration of those medical findings and the claimant's reported history, *they received some weight* when finding moderately significant limitations in three of the four broad areas of mental functioning.[47]

Plaintiff Springer argues that these two passages show that "Dr. Platt's opinion was disregarded because it was inconsistent with Dr. Magleby's findings."[48] In seeming contrast, the ALJ also found "Dr. Magleby's findings [to be] discounted as vague."[49]

Though Springer does not say more, his argument appears to be that what is good for the goose should be good for the gander. That is, if the unfavorable portions of Dr. Magleby's opinion were reliable enough to discredit medical opinion evidence favorable to Springer, then the favorable portions of Dr. Magleby's opinion should support Springer's position.

While it has some intuitive appeal, this argument does not succeed. First, Springer mischaracterizes the ALJ's decision in claiming that the ALJ "discounted" Dr. Magleby's

---

[46] Doc. 10 at 31 (emphasis added).
[47] *Id.* at 32 (emphasis added).
[48] Doc. 17 at 1.
[49] *Id.*

Case No. 5:19-cv-2562
Gwin, J.

opinion as vague. After all, the ALJ expressly gave "some weight" to Dr. Magleby's opinion because Dr. Magleby used recognized clinical methods to examine Springer's "moderate" memory impairments and reached results that were ultimately consistent with the record.[50]

At the same time, however, the ALJ acknowledged that Dr. Magleby's opinion used "vague terminology" in discussing the practical application of his clinical findings.[51] For instance, Dr. Magleby described Springer's "[b]ehavioral control" as "somewhat limited," Springer's "[j]udgment for confronting simple circumstances in daily life," as "mostly fair," and Springer's "ability to respond to [a] mental status inquiry" as "fairly average."[52]

Compare that language to Dr. Rabold's opinion, that the ALJ gave "significant" weight.[53] Dr. Rabold found that Springer "[c]an perform simple tasks immediately without the demands of fast pace or high production rate," "can interact superficially" with others, and "[c]an work in [a] predictable environment where if change occurs it can be easily explained."[54] The two opinions contrast in depth of detail.

There is, moreover, no contradiction in the ALJ crediting some aspects of Dr. Magleby's opinion while describing others as vague. After all, the ALJ referred to Dr. Magleby's opinion as "reliable" only when compared to Dr. Platt's May 2017 letter stating that Springer could not work. That Dr. Platt letter, by its own terms, was based mostly upon Springer's own subjective symptom reports to Dr. Platt.[55] Dr. Platt's findings were

---

[50] Doc. 10 at 32.
[51] *Id.*
[52] *Id.* at 381–82.
[53] *Id.* at 32.
[54] *Id.* at 129.
[55] *Id.* at 395.

-11-

Case No. 5:19-cv-2562
Gwin, J.

generalized. For example, Dr. Platt reported "flaws in [Springer's] memory and judgment" that made Springer "[in]capable of engaging in gainful employment."[56]

As the ALJ observed, Dr. Platt's impression was inconsistent with Dr. Magleby's empirical findings, which detected only moderate limitations in Springer's cognitive ability.[57] The vague portion of Dr. Magleby's opinion does not change that. The ALJ did not err by relying on some portions of Dr. Magleby's opinion while describing others as vague.

Second, Springer argues that the ALJ erred by "fail[ing] to place restrictions on Plaintiff's ability to understand, remember and apply information beyond the vague statement that he was limited to simple routine tasks."[58] This argument again mischaracterizes the ALJ's opinion, which stated Springer's limitations prevented him from performing "routine tasks" "that do not involve strict production quotas or production rate of pace."[59] Further, the ALJ stated that Springer could perform only jobs requiring him to "adapt[] to the stresses and pressures of only occasional changes in a work setting or routine that would be explained in advance and implemented gradually."[60]

The ALJ's opinion went further by recognizing that Springer could no longer work as an electrician and identifying specific jobs that Springer could perform, including laundry worker, marker, and packer, which together represent 250,000 national jobs.[61] This analysis is legally consistent with the Commissioner's regulations requiring ALJs to identify a

---

[56] *Id.*
[57] *Id.* at 382–85.
[58] Doc. 17 at 2.
[59] Doc. 10 at 32.
[60] *Id.*
[61] *Id.* at 33–34.

-12-

Case No. 5:19-cv-2562
Gwin, J.

claimant's disability along with "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."[62]

Beyond the specific grievances Springer identifies, the ALJ's decision was adequately supported by substantial evidence. Multiple physicians opined that Springer, while partially mentally impaired, could perform jobs in the national economy. Most importantly, Springer's own testimony about the relatively sophisticated care he gave his mother undercut Springer's claim that memory problems entirely prevented him from working.

Springer's claim and his arguments present close questions. If this Court served as the initial fact finder, it might find Plaintiff Springer disabled from gainful employment. Drs. Platt and Amanambu opined that Springer was more severely disabled. However, this Court's role is not to engage in *de novo* review of the ALJ's decision or resolve all evidentiary conflicts in the record. Because the ALJ's decision was "supported by substantial evidence" and "made pursuant to proper legal standards," no reversible error occurred.[63]

## IV. CONCLUSION

For these reasons, this Court **OVERRULES** Springer's objections, **ADOPTS** the R&R, and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED

Dated: March 17, 2021           s/ *James S. Gwin*
                                                            JAMES S. GWIN
                                                            UNITED STATES DISTRICT JUDGE

---

[62] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).
[63] *Rogers*, 486 F.3d at 241.